UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Christopher Rivera, | ) | Civil Action No.: 4:22-cv-04707-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | ORDER |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.   Procedural History

Plaintiff filed an application for DIB and SSI in August 2020. (Tr. 21). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in June 2022 at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge(ALJ) issued an unfavorable decision on June 28, 2022, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 21-39). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in November 2022, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this court

in December 2022. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born in April 1970 and was fifty years old on the alleged onset date. (Tr. 37). Plaintiff has past relevant work as a janitor. (Tr. 28). Plaintiff alleges disability originally due to right foot neuropathy, sleep apnea, pre-diabetes, chronic fatigue, psoriasis all over body, dizziness when standing too long or bending over, and depression. (Tr. 84). Pertinent medical records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of June 2022, the ALJ made the following findings of fact and conclusions of law (Tr. 21-39):

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2023.

2. The claimant has not engaged in substantial gainful activity since August 31, 2020, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following combination of severe impairments: obesity, psoriasis, osteoarthritis in the feet, plantar fasciitis, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He is to avoid concentrated exposure to hazards and extreme heat. He can understand, remember, and carry out simple, detailed but not complex instructions. He can have frequent interactions with the public, supervisors,

   and coworkers.

6. The claimant is not capable of performing past relevant work as a janitor (DOT#381.687-018). This work requires the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2020, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in the subjective symptom evaluation as to Plaintiff's psoriasis, stating that the evidence is supportive of Plaintiff's statements and the ALJ misconstrued and misstated what was actually contained in the medical records. Plaintiff argues this also caused error in the ALJ's determination of the RFC because all the relevant evidence was not considered in determining functional limits. Plaintiff argues the ALJ also erred in the subjective symptom evaluation as to Plaintiff's feet and as to Plaintiff's alleged need for a cane or walker. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

**A. LEGAL FRAMEWORK**

  **1. The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

4

bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**Subjective Symptom Evaluation**

Plaintiff argues his statements about psoriasis and its effects are consistent with the evidence of record and that the ALJ misstated what was actually contained in the medical records as to psoriasis.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce his capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

    1. Daily activities;
    2. The location, duration, frequency, and intensity of pain or other symptoms;
    3. Factors that precipitate and aggravate the symptoms;
    4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
    5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
    6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
    7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

>The ALJ summarized Plaintiff's testimony:
>
>The claimant testified about issues with psoriasis over most of his body with flares, bleeding, sores, skin cracking, and constant itching. He wears loose- fitting, soft clothes and shoes such as Crocs. He frequently changes his sheets due to bleeding and shedding. He bleeds on furniture, and he has bled through his shirt. Water while bathing causes stinging of his skin. Hot weather increases the itching. Psoriasis causes him to be antisocial. In addition, he has arthritis in his feet and ankles, which limits his ability to walk. He uses a cane, in addition to a motorized cart while shopping. He has problems with balancing and almost falling. Because of sleep apnea, he is tired all the time. He has depression. His medications may cause dizziness.

(Tr. 29). The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. The ALJ noted in 2020 Plaintiff had thick, plaque discoid lesions on his face, neck, posterior trunk, back, lower extremities, and ears, greater than 60% of his body surface area. (Tr. 29). The ALJ noted in 2021 Plaintiff had erythematous rash and plaque psoriasis. (Tr. 29). The ALJ noted photos and that there was a reference to itching in 2022. (Tr. 29). The ALJ found Plaintiff's severe impairment of psoriasis aligned with a light exertion, reduced posturals, and decreased heat exposure but no additional RFC limitations. Then, the ALJ continued citing records: stating dermatitis in August 2020 with normal skin texture and color, Humira was working with lesions smooth and flattening in October 2020, exams of skin being warm and dry in 2020 and 2021, exams of "no suspicious lesions" in 2021, and normal texture and no rash in March 2022. (Tr. 30). Several times throughout the ALJ's decision

this summary about psoriasis is repeated:

> The claimant has psoriasis. However, despite his reports of bleeding, his skin is consistently noted to be dry. There are no observations from medical providers of bleeding skin. Likewise, he reports cracking of his skin, but on some instances, there is smoothing of the psoriasis and minimal keratotic skin. He receives at least some improvement from medications such as Humira and Skyrizi. There are generally no suspicious lesions on the skin of the head, neck, arms, and legs (2F, 5F, 6F, 7F, 8F, 10F).

(Tr. 25-26, 33, 35). The repeated implications/characterizations of this paragraph are that Plaintiff has no lesions. Plaintiff frequently examined as having warm, dry skin, which the ALJ heavily relies on, while examining on the same date as being covered in lesions on the majority of his body. Because Plaintiff asserts the records cited by the ALJ do not stand for what the ALJ characterized the actual exams as showing, the following are a summary of the records relied on by the ALJ as to psoriasis in chronological order. The alleged onset date is August 31, 2020. (Tr. 21).

A month before the alleged onset date, Plaintiff was seen by Dr. Delfino for a Humira injection. Assessment was psoriasis. Plaintiff had "dry flaky lesions all over his body-penis, legs, chest, and scalp. Itchy and crusty. Did respond to steroid creams minimally but now is spreading... consistent with severe eczema or plaque psoriasis." (Tr. 354). On August 25, 2020, Plaintiff was seen by Dr. Mcaninch. (Tr. 346). Exam showed pitting edema and dermatitis. (Tr. 346).

On October 12, 2020, Plaintiff was seen by Dr. Delfino. Upon exam under general appearance, Plaintiff had "lesions resembling psoriatic arthritis." (Tr. 351). Upon skin exam, Plaintiff had "warm and dry, thick plaque discoid lesions on face, neck, posterior trunk, back, lower extremities, and bilateral ears." (Tr. 351).

On January 11, 2021, Plaintiff was seen by Dr. Delfino. (Tr. 459). "He wants to discuss Humira-it is NOT working to control psoriasis, lesions are growing and coalescing." (Tr. 459).

9

Under general appearance exam, "lesions resembling psoriatic arthritis." Under skin exam, Plaintiff had "warm and dry thick plaque discoid lesions on face, neck, posterior trunk, back, lower extremities, and bilateral ears." (Tr. 460). There are photos of the front of Plaintiff's legs and Plaintiff's back reflecting this exam. (Tr. 461-462).

At a March 8, 2021 emergency room visit that was not for his skin condition, Plaintiff's skin was noted as dry warm, no rashes. (Tr. 439). (Based on the following visit in same month, it may be that skin was not actually examined). On March 30, 2021, Plaintiff was seen by Dr. Delfino. (Tr. 456). Reason for appointment was "psoriasis is getting worse." (Tr. 456). "He wants to discuss Humira-it is NOT working to control psoriasis, lesions are growing and coalescing." (Tr. 456). Under general appearance exam, "lesions resembling psoriatic arthritis." Under skin exam, Plaintiff had "warm and dry thick plaque discoid lesions on face, neck, posterior trunk, back, lower extremities, and bilateral ears. Greater than 60% BSA." (Tr. 457).

On May 7, 2021, Plaintiff was seen by NP Gault for concerns that his new, different rash was actually poison ivy. (Tr. 453). Upon skin exam, skin was "warm and dry, no suspicious lesions on visible skin of head, neck, arms, and legs; erythematous rash noted to bilateral arms and trunk, plaque psoriasis noted to bilateral arms, abdomen, back, and bilateral legs. (Tr. 453). Plaintiff had poison ivy dermatitis, received an injection, and was prescribed cream. (Tr. 453).

On June 29, 2021, Plaintiff was seen by Dr. Delfino. "He is getting some improvement in psoriasis but still covering 75% BSA." Upon skin exam, "warm and dry, no suspicious lesions on visible skin of head, neck, arms, and legs; erythematous rash noted to bilateral arms and trunk, plaque psoriasis noted to bilateral arms, abdomen, back, and bilateral legs." (Tr. 451). Medications were refilled.

At the exam prior to Plaintiff's colonoscopy in August 2021, Plaintiff was positive for rash "psoriasis BLE, back abdomen." (Tr. 436). Upon exam, skin is warm, rash is present, "large areas of psoriasis to BLE, across abdomen and back." (Tr. 427).

On September 29, 2021, Plaintiff was seen by Dr. Delfino. "He is now using Skyrizi for psoriasis and it is slowly improving what was once 75% BSA." (Tr. 447). Upon skin exam, "warm and dry, no suspicious lesions on visible skin of head, neck, arms, and legs; erythematous rash noted to bilateral arms and trunk, plaque psoriasis noted to bilateral arms, abdomen, back, and bilateral legs-improved now smooth and not keratotic except on B shins." (Tr. 448).

In November 2021, colonoscopy doctor noted positive for skin rash and psoriasis on legs, back, and abdomen. (Tr. 479). Upon exam, Plaintiff had large areas of psoriasis to legs, abdomen, and back with rash and warm skin. (Tr. 480).

On November 29, 2021, Plaintiff was seen by Dr. Delfino. (Tr. 499). "He is now using Skyrizi for psoriasis and it is slowly improving what was once 75% BSA." (Tr. 499). Upon skin exam, "warm and dry, no suspicious lesions on visible skin of head, neck, arms, and legs; erythematous rash noted to bilateral arms and trunk, plaque psoriasis noted to bilateral arms, abdomen, back, and bilateral legs-improved now smooth and not keratotic except on B shins and mid back, hyperpigmentation present." (Tr. 500).

On March 16, 2022, Plaintiff was seen by sports medicine for right ankle and foot pain. (Tr. 523). Skin exam was normal with no rash. (Plaintiff argues only bone concerns were being addressed by orthopedist not Plaintiff's skin).

Plaintiff's hearing was a phone hearing. The ALJ said Plaintiff needed to explain what the photos showed. (Tr. 51). Plaintiff testified the photo was psoriasis and that his skin would flare with

11

bleeding, cracking, flaking when dry, and constant itching. (Tr. 56). Plaintiff testified the itching was constant misery. (Tr. 56). Plaintiff testified the photo was of psoriatic plaque on his back. (Tr. 56-57). Plaintiff testified this same type of psoriatic plaque in the photo was everywhere on his body. (Tr. 57). Plaintiff is unable to wear underwear. (Tr. 58). Plaintiff testified the shots just discolored the redness to brown, but it still itched a lot. (Tr. 59-60). Plaintiff testified the sores sometimes close and reopen and do not completely heal. Plaintiff testified the itching did not go away regardless of the medications. (Tr. 60). Plaintiff testified he did not go anywhere or do anything social anymore because his condition was embarrassing and caused a lot of anguish mentally. (Tr. 61). Plaintiff testified he did not go sing karaoke[3] anymore. (Tr. 67). Plaintiff testified there was no time that he is without psoriasis breakouts. (Tr. 71). The ALJ asked about risk of infection. Plaintiff answered "I feel that it gets infected when it spreads and it starts to merge and get bigger, and it just doesn't go away. It just gets worse." The ALJ referred to Plaintiff's impairment as "eczema" twice. Plaintiff corrected the ALJ stated it was psoriasis, not eczema. (Tr. 73). The VE testified that an employer would likely not tolerate unpredictable bleeding from a person's skin. (Tr. 81).

It is unclear whether the record citations by the ALJ support the ALJ's finding that Plaintiff's statements about the effects of his psoriasis[4] were not entirely consistent with the record. The ALJ

---

[3] The ALJ cited to karaoke five times as evidence of Plaintiff's socialization without noting Plaintiff's testimony that he did not do it anymore and when he did, it was a handful of times over several years. (Tr. 26, 34, 36) (Exhibit 3E). In November 2020, Plaintiff reported once or twice a month singing karaoke; at that time, Plaintiff's onset date was recent in August 2020. (Tr. 257). For the same question in September 2021, karaoke was no longer listed. (Tr. 293).

[4] Psoriasis is defined as "a chronic and recurrent disease characterized by dry, well-circumscribed, silvery, scaling papules and plaques of various sizes." *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 777 (6th Cir. 1998). Severe psoriasis is defined as greater than ten percent of the skin affected. *Thierry B. v. Decker*, 2020 WL 3074006, at *8 (D.N.J. June 10, 2020).

places heavy reliance on "smoothing of the psoriasis and minimal keratotic skin" and "generally no suspicious lesions on the skin of the head, neck, arms, and legs" with the ALJ citing Exhibits 2F, 5F, 6F, 7F, 8F, 10F, where those same exhibits show objective exams of: 75% of Plaintiff's body was covered, even with medication improvement, erythematous rash noted to bilateral arms and trunk, and plaque psoriasis noted to bilateral arms, abdomen, back, and bilateral legs. (Tr. 25-26, 33, 35). It is evident that there is a difference upon exam between "suspicious lesions," "erythematous rash," "plaque psoriasis," and "warm and dry thick plaque discoid lesions." It is unclear whether the ALJ's reliance on "warm and dry" and "no suspicious lesions" affected his consideration of the same exams showing other skin effects on the majority of Plaintiff's body. Also, the photos in the record speak to some consistency between Plaintiff's allegations and exam findings. It cannot be said that substantial evidence supports the ALJ's subjective symptom evaluation here. This is not harmless error since some allegations by Plaintiff, if found consistent, were not considered in the RFC, such as functional limits as to social interaction and effects on CPP as to itching.

As discussed above, the court cannot find that the ALJ's decision is supported by substantial evidence, and remand is appropriate. Remand is appropriate where inadequacies in the ALJ's analysis frustrate meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015). Upon remand, the ALJ should take into consideration all of Plaintiff's briefed allegations of error and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record

presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

September 26, 2023
Florence, South Carolina

<u>s/Thomas E. Rogers, III</u>
Thomas E. Rogers, III
United States Magistrate Judge